UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

**EDWARD PHILPOT,**
**PLAINTIFF**

**CASE NO. 1:09CV00197**
**(BARRETT, J.)**
**(HOGAN, M.J.)**

VS.

**MICHAEL J. ASTRUE,**
**COMMISSIONER OF SOCIAL SECURITY,**
**DEFENDANT**

## REPORT AND RECOMMENDATION

Plaintiff filed his application for disability and supplemental security income in April,
2006. His application was denied, both initially and upon reconsideration. Plaintiff then
requested and obtained a hearing before an Administrative Law Judge (ALJ) in October, 2008 at
Cincinnati, Ohio. Plaintiff, who was represented by counsel, testified as did witness, Sharon
Powell, Medical Expert (ME), Dr. James McKenna and Vocational Expert (VE), Misha Dowd.
The ALJ reached an unfavorable decision in November, 2008. Plaintiff then processed an appeal
to the Appeals Council, which denied review in January, 2009. The decision of the Appeals
Council is dated January, 2009, an obvious typographical mistake, since the decision appealed
from was dated November, 2008.

## STATEMENTS OF ERROR

Plaintiff asserts that the ALJ erred in four respects: (1) rejecting the treating physician's
opinion, (2) failing to fairly and fully develop the record, (3) failing to consider gout as a severe
impairment, and (4) failing to properly apply *Drummond v. Commissioner of Social Security*, 126
F.3d 837 (6th Cir. 1997). The latter argument has its roots in a prior ALJ's decision that assessed
Plaintiff's residual functional capacity as being limited to less than a full range of sedentary
activities, while the ALJ, with regard to the present filing, found Plaintiff capable of a restricted

range of light work.

## PLAINTIFF'S TESTIMONY AT THE HEARING

Plaintiff testified that he was 47 years of age, weighed 195 lbs. on a 5'9" frame, is left-handed, separated, the parent of a young daughter, living alone in a low-income apartment and a high-school graduate. Plaintiff testified that he last worked in 2000 as a road ranger in Florida. Prior employment was as a bartender and bouncer at Charlie's and Portside Tavern in Port Charlotte, Florida.

Plaintiff described his physical problems as low back pain and chronic gout, the latter of which affects his feet and elbows. He testifies that he sees a "pulmonary doctor," who prescribed oxygen and currently treats at the Butler County Community Health Services. Plaintiff described his medications as Lyoderm patch, Advair, Celexa for depression, Temazepam, Tramadol and Avapro for blood pressure. He suffers from no side effects from the various medications.

Plaintiff testified that he has trouble standing when suffering from gout, episodes which occur at the rate of once every 2-3 weeks. He suffers back pain when lifting objects over 15 lbs. Plaintiff indicated that he can walk "less than a block" and sit for 20-30 minutes at a time. He testified that he was hospitalized in Florida for a psychiatric problem in 2004 or 2005 and saw a mental health professional while in Florida

Mr. Philpot said that has a "pretty good appetite," but pain interrupts his ability to sleep and he has low energy. He also has difficulty concentrating, remembering things and has experienced suicidal ideation. He is a heavy smoker and has been unable to stop smoking despite medical advice to do so. He does not drive, is able to read and watch television and shops when he is able with his friend, Sharon Powell. He does no cooking or cleaning and performs no household chores.

Dr. Wehr, a pulmonologist, suspected that he had sleep apnea, but Plaintiff's treatment was delayed because of insurance uncertainties, which are now favorably resolved. Gout flare-ups result in incapacitation for approximately 3 days. He takes Allopurinol (for gout), Indocin and Indometacin for gout, a disease he has had for approximately 10 years. Dr. Schneider, an

2

internist, recommended that Plaintiff use a cane, but Dr. Schneider will not send medical records because Plaintiff has not paid the doctor's bill. (Tr. 59)

Plaintiff's lower back pain radiates down the right leg. He estimated that he could stand for 10 minutes. (Tr. 23-51) He apparently suffered an injury to his back in 2000 and resolved his workers compensation claim sometime before 2004. The back injury was a stimulus to stop smoking at a 3-4 pack per day rate. (Tr., Pgs, 57-58)

Sharon Powell, Plaintiff's neighbor and friend, prepares meals, does the laundry and cleans the house because she considers it the neighborly thing to do for a friend in need. Ms. Powell said that Plaintiff's "day is basically structured around sitting in front of the TV." She testified that "swelling of the elbows is quite common with him." She said that Plaintiff cannot walk at all when his feet swell due to gout. She testified that Plaintiff uses oxygen daily. (Tr. 51-54).

## THE MEDICAL EXPERT

James McKenna, M.D., an internist and pulmonary specialist, testified as a medical expert. Dr. McKenna stated that although Plaintiff was once obese, he was not as of the date of the hearing. Dr. McKenna also stated that the fact that Plaintiff was coughing and wheezing a lot would support a diagnosis of asthma. Pulmonary function tests, done in February, 2005, showed "39% reversibility in both his FECL and his forced vital capacity," indicating "very poor control of his asthma." Pulmonary function tests from November, 2006 show a "normal diffusion capacity with normal gas exchange." The tracings demonstrate that Plaintiff has asthma, "a non-severe impairment from the exertional aspect." Dr. McKenna testified that anyone who has asthma should avoid exposure to cold and environmental irritants. Plaintiff had an oxygen saturation of 96%, which is "entirely normal." His arterial blood gases are at the lower limit of normal. Dr. McKenna opined that Plaintiff does not need oxygen to ambulate because he has normal pulmonary function tests, diffusion capacity and gas exchange, but that because of his former obesity, he might have required it to sleep because his lungs may have been compressed by his abdomen.

3

His MRI in January, 2008 showed "normal age-related changes" and x-rays of the lumbar spine were "entirely normal." Dr. McKenna found "no basis for the chronic pain complaints" and was "troubled by the whole claim." Dr. McKenna said that Allopurinol causes uric acid to decrease and is dangerous unless taken according to direction. Dr. McKenna said that recurrent attacks of gout should not occur with persons who are properly compliant with the medication prescribed. Dr. McKenna said that Plaintiff's coughing was either the result of smoker's bronchitis or improperly controlled asthmatic bronchitis, the latter of which may be due to improper inhaling of Advair. He did concede that Plaintiff "probably has nonobstructive COPD." Dr. McKenna felt that Plaintiff could perform medium work with unlimited bending and stooping, but his lifting should be limited and he should not be exposed to extreme cold or respiratory irritants.

## THE VOCATIONAL EXPERT AND THE HYPOTHETICAL QUESTION

The VE was asked to assume an ability to lift, carry, push and pull 20 lbs. occasionally and 10 lbs. frequently, an ability to stand/walk for 6 hours in a workday, an ability to occasionally stoop, kneel, crouch and climb ramps or stairs, an inability to crawl, climb ladders or scaffolds, no working at unprotected heights or even moderate exposure to extreme cold or respiratory irritants. The VE responded that the Plaintiff would not be able to perform his past relevant work, but could perform a representative number of unskilled clerical jobs at the light exertional level.

The VE was asked a second hypothetical question, based on the residual functional capacity as formulated by the ALJ and used in a prior decision. That question assumed an ability to lift and carry 10 lbs on occasion and 3 lbs. frequently, an ability to occasionally bend, climb, balance, stoop, kneel crawl and reach within arm's length, but no lifting off the floor. Work should be in a controlled environment with no extremes of temperature or humidity. The VE identified a representative number of sedentary and unskilled jobs in the national economy.

The third hypothetical was really an additional limitation to both previous hypothetical questions. The VE was asked if the use of oxygen would reduce or eliminate the number of jobs.

4

The VE responded that it would reduce each category by approximately 50% and would require an accommodation from the employer with reference to the jobs in both exertional categories because the oxygen would have to accompany the worker as he moved about and there would be some minimal moving even with sedentary work.

The VE said that if Plaintiff required the use of a cane, jobs at the light level would be eliminated, but she was not sure whether the use of a cane would eliminate sedentary jobs requiring some walking. The VE conceded that if the ALJ accepted Dr. Glacier's opinion, light work would be eliminated and if the ALJ accepted Dr. Wehr's or Dr. Barrish's opinion, all full-time work would be eliminated. (Tr. 75-89).

Plaintiff's counsel solicited an opinion from William T. Cody, a Vocational Expert who frequently testifies in Social Security cases. Mr. Cody's opinion is based on the assumption that Plaintiff requires oxygen twenty-four hours per day and is that the use of oxygen "precludes not only the unskilled sedentary work, but also any other unskilled work." Mr. Cody's opinion is that "A limitation like the use of oxygen can only be accommodated in skilled work activity," skills which Plaintiff does not have. The use of oxygen creates "an unsafe risk of accident and injuries of not only the person with the oxygen, but co-workers as well." (Tr. 139-140).

## THE ADMINISTRATIVE LAW JUDGE'S DECISION

The ALJ found that Plaintiff had the following impairments: degenerative disc disease in the lumbar spine. COPD/asthma, gout, obesity, insomnia and depression The ALJ found the impairments of degenerative disc disease and COPD/asthma to be severe. The ALJ found that the combination of impairments failed to meet any Listing and that Plaintiff's residual functional capacity was as described in his first hypothetical question to the VE. The ALJ found that Plaintiff could perform a limited range of light and unskilled work and that he was neither disabled nor entitled to share in the Social Security fund.

5

## THE MEDICAL RECORD

Plaintiff consulted Peter Lewis, M.D., an internist, in September, 2005. Dr. Lewis, who practices in Fort Myers, Florida, said that Plaintiff had "multiple medical problems, including chronic obstructive pulmonary disease and now (is) oxygen dependent 24 hours a day." He feels "very stressed and nervous" and has "chronic shortness of breath with exertional dyspnea." Dr. Lewis described Plaintiff as looking "chronically ill." Dr. Lewis stated that Plaintiff's neurological examination was "unremarkable," but prescribed Effexor for depression, Methadone and Naprosyn for chronic back pain and Combivent inhaler plus Spiriva for chronic back pain. Dr. Lewis also recommended that Plaintiff see a mental health counselor. (Tr. 240-241).

In June, 2005, Dr. Lewis described Plaintiff's chronic obstructive disease as "severe." He said that Plaintiff "requires oxygen 24 hours per day to maintain adequate respiratory status." The lungs were described as "mostly clear with very course breath sounds, poor air movement, but no wheezing." Plaintiff was advised to increase his physical activity, lose weight and stop smoking. (Tr. 245-246). Dr. Lewis' opinion was that Plaintiff was "medically disabled" because of "severe COPD and is dependent on oxygen 24 hours per day." (Tr. 248).

Plaintiff consulted Armenia Surgery Center in Tampa, Florida during the period from November, 2005 to March, 2006. In November, 2005, Plaintiff complained about lower back pain radiating down his right leg. Impairments identified were chronic low back pain, chronic gout, excessive smoking and lumbar spine degenerative disc disease. MS-Contin was prescribed and an epidural steroidal injection was planned. (Tr. 276-277). In January, 2006, an injection of Kenalog, Lidocaine and NaCl occurred. Later in January, 2006 an Epidurogram was performed by Robert Guirguis, D.O. (Tr. 263-277).

Records from Tampa Pain Center show that Plaintiff, at the time a 3-pack per day smoker and a person on supplemental oxygen for 2 years, complained of "shortness of breath" He also complained of low back pain, the stimulus for which was a "twisting-wrenching" injury suffered in 2001. Epidural injections "helped quite a bit." Plaintiff was described as "obese" and as "ambulating with a slow normal gait. Breath sounds are "diminished bilaterally. There are no rales, rhonchi, wheezes or evidence of cyanosis." He "does have some significant findings on

evaluation of his back pain in that he has some right lower extremity weakness against resistance and some decrease in the right deep tendon reflexes compared to the left." The diagnosis included "COPD with ongoing tobacco abuse and low back pain with right radiculopathy." (Tr. 279-281).

There was decreased range of motion in the lumbosacral spine on both flexion and extension. (Tr. 284). Martin Fritzhand, M.D. concluded in July, 2006 that pulmonary function studies showed that Plaintiff's COPD was "moderately severe." (Tr. 288).

Loraine Glaser, M.D. examined x-rays of Plaintiff's lumbosacral spine, pulmonary function studies and a chest x-ray and concluded that Plaintiff "appears incapable of performing even a mild amount of ambulating, standing, bending, kneeling, pushing, pulling, lifting and carrying heavy objects. He has "no difficulty sitting, reaching, grasping and handling objects." "The patient would obviously do best in dust-free environment." (Tr. 291).

Eli Rubenstein, M.D., read an x-ray of the lumbar spine in July, 2006 and concluded that it was "normal." (Tr. 292). Stephen Hartman, M.D., conducted a pulmonary function test in February, 2005. Dr. Hartman's conclusions were: "[m]oderate obstructive ventilatory defect with significant reversibility, low lung volumes may suggest concurrent restriction and normal arterial blood gases on room air at rest." (Tr. 320). A chest x-ray in March, 2004 showed "no active disease." (Tr. 311).

In March, 2005, Plaintiff reported to Dr. Lewis that he "feels great" after being prescribed permanent supplemental oxygen. Plaintiff reported less shortness of breath, increased physical activity and loss of weight. Dr. Lewis reported that Plaintiff's medical condition was stable. (Tr. 313-314). In February, 2005, Dr. Lewis was considering oxygen therapy, but was awaiting pulmonary function tests and a referral to a pulmonologist. (Tr. 320). In February, 2005, Dr. Lewis felt that Plaintiff's depression had improved. (Tr. 322). In January, 2005, Dr. Lewis described Plaintiff's COPD as "quite profound and appears to be getting worse." (Tr. 323). In January, 2005, Dr. Lewis said that Plaintiff "appears uncomfortable breathing" and has a "frequent cough." He has "course breath sounds, poor air movement and scattered wheezing." His neurologic examination is unremarkable in that strenth, reflexes and gait are normal. (Tr. 324). In October, 2004, Dr. Lewis described Plaintiff's depression as "chronic," but responsive

7

to Lexapro. Mental health counseling was recommended. His COPD was also described as "chronic," but aggravated by smoking. Gout was described as "stable," but subject to flare-ups. (Tr. 327-329). In September, 2004, Dr. Lewis reported that Plaintiff's depression was made worse by the loss of his home in a hurricane. A referral to a psychiatrist was suggested. His COPD and pain were described as "chronic." (Tr. 333). Back pain was being monitored by a pain specialist.

Plaintiff was evaluated by Michael Stock, M.D. in November, 2006. Dr. Stock's opinion was that Plaintiff could lift 20 lbs occasionally and 10 lbs. frequently. He could stand/walk for about 6 hours in a workday and sit for about 6 hours. He could occasionally climb ramps/stairs, balance and stoop, but should never climb ladders or scaffolds and should avoid fumes, odors, dust gases, etc. A hand-held assistive device is medically necessary for ambulation. (Tr. 388-395).

Plaintiff was evaluated in April, 2007 by Timothy L. Schoonover, D.O., for headache complaints. Dr. Schoonover indicated that Plaintiff's back pain was the result of an industrial accident. He also had thoracic surgery as a result of being stabbed. A CT scan and MRI of the head disclosed no abnormality. The lungs were clear, but there were decreased breath sounds, near the site of the stab wound and previous surgery. Indocin was prescribed. (Tr. 401-435)

A epidural steroidal injection at L4-5 was done in January, 2007 by John Beresh, M.D., in Hamilton, Ohio. (Tr. 436). In December, 2006, Dr. Beresh reported that Plaintiff's low back pain began in 2000 when a floor jack fell on him. He was treated with Percocet, Lortab and Oxycontin. A trigger point injection was done in September, 2007 with no benefit. The pain radiates down the right leg, but strength and sensation are normal. The diagnosis was low back pain and lumbar radiculopathy. (Tr. 438-439). An MRI in January, 2008 showed "mild symmetrical facet arthropathies bilaterally from L-3 through S-1. The rest of the examination was nonremarkable. There was no spinal stenosis or disc protrusion seen." (Tr. 440). A epidural steroidal injection at L4-5 was done by Dr. Beresh in December, 2007.

Kenneth L. Wehr, M.D., a pulmonologist, reported that he saw Plaintiff during the period from June to December, 2006. Dr. Wehr said that on examination, Plaintiff has "increased A-P diameter, rhonchi and wheezing, had had 9 episodes of asthma/bronchitis and his symptoms are

8

consistent with the doctor's physical findings. A chest radiograph in August, 2007 showed a "degenerative dorsal spine and pleural parenchymal scarring, bases of lungs." Dr. Wehr said that Plaintiff's symptoms included: shortness of breath, orthopnea, chest tightness, wheezing, rhonchi, edema, episodic acute asthma, episodic acute bronchitis, fatigue and coughing. Precipitating factors include: upper respiratory infection, allergens, exercise, emotional stress, irritants and cold. Dr. Wehr's opinion was that Plaintiff's symptoms would "constantly" interfere with his ability to attend and concentrate and that Plaintiff's ability to deal with stress is "markedly limited." Dr. Wehr opined that Plaintiff could sit for 1 hour and stand for 5 minutes. Dr. Wehr said that Plaintiff could stand/walk for less than 2 hours in a workday, but sit at least 6 hours. He would need a 20-30 minute break every hour. He could occasionally lift less than 10 lbs.,but should never lift 10 lbs. or more. He should avoid temperature and humidity extremes and all irritants and allergens. Dr. Wehr said that Plaintiff would likely miss work more than 3 times per month, suffered from "situational depression and would both be unable to sustain concentration because of his depression and to function effectively because of COPD and pain."

In a report dated in July, 2006, Dr. Wehr concluded after reviewing a pulmonary function study that Plaintiff has a "moderate obstructive ventilatory disease and reversible lung disease. (Tr. 454). Dr. Wehr also reported in February, 2007 that Plaintiff had COPD. Dr. Wehr reported that Plaintiff's ability to stand/walk was affected, but that his ability to sit was unaffected. De. Wehr's opinion was that Plaintiff could lift 5 lbs. occasionally, that his ability to make repetitive foot movements was moderately limited. His ability to bend and reach was markedly limited and his ability to push/pull was extremely limited. Dr. Wehr said that Plaintiff was "unemployable," that his symptoms had lasted for several years and that his symptoms would be expected to last for 12 months or more. (Tr. 458-461).

Plaintiff was seen in the Emergency Room of St. Elizabeth Hospital in Covington in June, 2008, for COPD, chronic bronchitis and emphysema, likely caused by cigarette smoking. (Tr. 462-471). He was also seen at Health Point Family Care in June, 2008 for a coughing spell and difficulty breathing. (Tr. 473-474). Plaintiff treated with Dr. Kevin Malloy of the Butler County Community Health Consortium and was given refills of his medications. His complaints were depression, low back pain, gout, breathing problems and insomnia. He was referred to the

9

Pain Clinic and to a mental health professional. (Tr. 479-491).

A polysomnograph evaluation was performed in October, 2008 at Fort Hamilton Hospital in Hamilton, Ohio. The test showed "no definite evidence for OSAS" and Dr. Wehr observed that the sleep fragmentation was "possibly due to medication effect." (Tr. 496-506).

Stanley Scheidler, D.O.. prescribed the use of a cane in June- July, 2006 to "reduce mobility deficit" and described Plaintiff's impairment as "osteoarthritis." Dr. Wehr prescribed portable oxygen for use during rest and activity and described Plaintiff's symptoms as "wheezing, chest tightness" and having "dyspnea" after both exertion and normal activity. Dr. Scheidler said that Plaintiff had "poor sleep quality" and suffered from "excessive daytime sleepiness." He also had "chronic back pain" and "gout." (Tr. 507-511).

## OPINION

The following principles of law control resolution of the issues raised in this case. Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

To qualify for disability insurance benefits, plaintiff must meet certain insured status requirements, be under age 65, file an application for such benefits, and be under a disability as defined by the Social Security Act. 42 U.S.C. §§ 416(i), 423. Establishment of a disability is contingent upon two findings. First, plaintiff must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). Second, the impairments must render plaintiff unable to engage in the work previously performed or in any

10

other substantial gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2).

To qualify for SSI benefits, plaintiff must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.202. Eligibility is dependent upon disability, income, and other financial resources. 20 C.F.R. § 416.202. To establish disability, plaintiff must demonstrate a medically determinable physical or mental impairment that can be expected to last for a continuous period of not less than twelve months. Plaintiff must also show that the impairment precludes performance of the work previously done, or any other kind of substantial gainful employment that exists in the national economy. 20 C.F.R. § 416.905.

Regulations promulgated by the Commissioner establish a sequential evaluation process for disability determinations. 20 C.F.R. § 404.1520. First, the Commissioner determines whether the individual is currently engaging in substantial gainful activity; if so, a finding of nondisability is made and the inquiry ends. Second, if the individual is not currently engaged in substantial gainful activity, the Commissioner must determine whether the individual has a severe impairment or combination of impairments; if not, then a finding of nondisability is made and the inquiry ends. Third, if the individual has a severe impairment, the Commissioner must compare it to those in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. If the impairment meets or equals any within the Listing, disability is presumed and benefits are awarded. 20 C.F.R. § 404.1520(d). Fourth, if the individual's impairments do not meet or equal those in the Listing, the Commissioner must determine whether the impairments prevent the performance of the individual's regular previous employment. If the individual is unable to perform the relevant past work, then a prima facie case of disability is established and the burden of going forward with the evidence shifts to the Commissioner to show that there is work in the national economy which the individual can perform. *Lashley v. Secretary of H.H.S.*, 708 F.2d 1048 (6th Cir. 1983); *Kirk v. Secretary of H.H.S.*, 667 F.2d 524 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983).

The grid is designed for use when the alleged impairment manifests itself through limitations in meeting the strength requirements of jobs. 20 C.F.R. Subpart P, Appendix 2, § 200.00(e). If plaintiff suffers solely from nonexertional impairments, the grid is inapplicable

11

and the Commissioner must rely on other evidence to rebut plaintiff's prima facie case of disability. *Id.*, § 200.00(e)(1). Nonexertional impairments include "certain mental, sensory, [and] skin impairments" as well as "postural and manipulative limitations [and] environmental restrictions." 20 C.F.R. Subpart P, Appendix 2, § 200.00(e). Where a plaintiff suffers from an impairment or a combination of impairments that results in both exertional and nonexertional limitations, the grid is consulted to see if a finding of disability is directed based upon the strength limitations alone. If not, the grid is then used as a framework and the Commissioner examines whether the nonexertional limitations further diminish plaintiff's work capability and preclude any types of jobs. *Id.*, § 200.00(e)(2). If an individual suffers from a nonexertional impairment that restricts performance of a full range of work at the appropriate residual functional capacity level, the Commissioner may use the grid as a framework for a decision, but must rely on other evidence to carry his burden. *Abbott v. Sullivan*, 905 F.2d 918, 926-27 (6th Cir. 1990); *Damron v. Secretary of H.H.S.*, 778 F.2d 279, 282 (6th Cir. 1985); *Kirk v. Secretary of H.H.S.*, 667 F.2d 524, 528-29 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). The existence of a minor nonexertional impairment is insufficient to preclude use of the grid for directing a decision. Rather, plaintiff must demonstrate that the nonexertional impairment "significantly limits" his ability to do a full range of work at the appropriate exertional level in order to preclude a grid based decision. *Atterberry v. Secretary of H.H.S.*, 871 F.2d 567, 572 (6th Cir. 1989); *Cole v. Secretary of H.H.S.*, 820 F.2d 768, 771-72 (6th Cir. 1987); *Kimbrough v. Secretary of H.H.S.*, 801 F.2d 794, 796 (6th Cir. 1986).

The assumptions contained in an ALJ's hypothetical question to a vocational expert must be supported by some evidence in the record. *Hardaway v. Secretary of H.H.S.*, 823 F.2d 922, 927-28 (6th Cir. 1987). A proper hypothetical question should accurately describe plaintiff "in all significant, relevant respects; for a response to a hypothetical question to constitute substantial evidence, each element of the hypothetical must accurately describe the claimant." *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994). *See also Varley v. Secretary of H.H.S.*, 820 F.2d 777, 779 (6th Cir. 1987). Where the evidence supports plaintiff's allegations of pain, a response to a hypothetical question that omits any consideration of plaintiff's pain and its effects is of "little if any evidentiary value." *Noe v.*

*Weinberger*, 512 F.2d 588, 596 (6th Cir. 1975). However, "the ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals." *Stanley v. Secretary of H.H.S.*, 39 F.3d 115, 118 (6th Cir. 1994).

A treating physician's opinion is entitled to weight substantially greater than that of a nonexamining medical advisor or a physician who saw plaintiff only once. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Lashley v. Secretary of H.H.S.*, 708 F.2d 1048, 1054 (6th Cir. 1983). A summary by an attending physician made over a period of time need not be accompanied by a description of the specific tests in order to be regarded as credible and substantial. *Cornett v. Califano*, No. C-1-78-433 (S.D. Ohio Feb. 7, 1979) (LEXIS, Genfed library, Dist. file). A physician's statement that plaintiff is disabled is not determinative of the ultimate issue. *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984). The weight given a treating physician's opinion on the nature and severity of impairments depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record. 20 C.F.R. § 404.1527(d); *Harris v. Heckler*, 756 F.2d 431 (6th Cir. 1985). If not contradicted by any substantial evidence, a treating physician's medical opinions and diagnoses are afforded complete deference. *Harris*, 756 F.2d at 435. *See also Cohen v. Secretary of H.H.S.*, 964 F.2d 524, 528 (6th Cir. 1992). While the Commissioner may have expertise in some matters, this expertise cannot supplant the medical expert. *Hall v. Celebrezze*, 314 F.2d 686, 690 (6th Cir. 1963); *Lachey v. Secretary of H.H.S.*, 508 F. Supp. 726, 730 (S.D. Ohio 1981).

It is the Commissioner's function to resolve conflicts in the medical evidence and to determine issues of credibility. *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994); *Hardaway v. Secretary of H.H.S.*, 823 F.2d 922, 928 (6th Cir. 1987); *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984). The Commissioner's determination must stand if it is supported by substantial evidence regardless of whether the reviewing court would resolve the conflicts in the evidence differently. *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). *See also Boyle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *Tyra v. Secretary of H.H.S.*, 896 F.2d 1024, 1028 (6th Cir. 1990). The Commissioner must state not only the evidence considered which supports the conclusion but must also give some indication of the evidence rejected in order to facilitate meaningful judicial review. *Hurst v. Secretary of H.H.S.*, 753 F.2d 517, 519 (6th Cir. 1985).

*See also Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987).

Section 405(h) of Title 42 provides that "[t]he findings and decision of the Commissioner after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the Commissioner shall be reviewed by any person, tribunal, or governmental agency except as herein provided." 42 U.S.C. § 405(h). In certain circumstances, § 405(h) prevents the Commissioner from reconsidering the evidence and reaching conclusion that is contrary to a finding on the same issue in a prior final determination. *Dennard v. Secretary of H.H.S.*, 907 F.2d 598 (6th Cir. 1990); *Lively v. Bowen*, 858 F.2d 177 (4th Cir. 1988); *Gavin v. Heckler*, 811 F.2d 1195 (8th Cir. 1987). For instance, where the Commissioner's prior final determination found that plaintiff could not perform his past relevant work because the work was heavy in nature and he was limited to sedentary work, it is error for the Commissioner to subsequently reevaluate the nature of plaintiff's past relevant work and determine that he is able to perform it because it is light to sedentary work. *Dennard*, 907 F.2d at 599-600.

While the administrative hearing is not an adversarial procedure, the Administrative Law Judge (ALJ) occupies a delicate position when an individual is not represented by counsel at the hearing. The ALJ must elicit all relevant facts on both sides of the issue in order to fully develop the record; at the same time, he must not assume the role of counsel for the individual. *Lashley v. Secretary of H.H.S.*, 708 F.2d 1048, 1051-52 (6th Cir. 1983). By itself, lack of representation by counsel at the hearing is not grounds for reversal. *Duncan v. Secretary of H.H.S.*, 801 F.2d 847, 856 (6th Cir. 1986); *Holden v. Califano*, 641 F.2d 405, 408 (6th Cir. 1981). On review, the Court must carefully examine the record and determine if the ALJ fulfilled his duty of developing a full and fair record. *Lashley*, 708 F.2d at 1051-52.

If the Commissioner's decision is not supported by substantial evidence, the Court must decide whether to reverse and remand the matter for rehearing or to reverse and order benefits granted. The Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." 42 U.S.C. § 405(g); *Melkonyan v. Sullivan*, 111 S. Ct. 2157, 2163 (1991).

Where the Commissioner has erroneously determined that an individual is not disabled

at steps one through four of the sequential evaluation, remand is often appropriate so that the sequential evaluation may be continued. *DeGrande v. Secretary of H.H.S.*, 892 F.2d 1043 (6th Cir. Jan. 2, 1990) (unpublished, available on Westlaw). Remand is also appropriate if the Commissioner applied an erroneous principle of law, failed to consider certain evidence, failed to consider the combined effect of impairments, or failed to make a credibility finding. *Faucher v. Secretary of H.H.S.*, 17 F.3d 171, 176 (6th Cir. 1994). Remand ordered after a hearing on the merits and in connection with an entry of judgment does not require a finding that the Commissioner had good cause for failure to present evidence at the prior administrative hearing. *Faucher*, 17 F.3d at 173.

Benefits may be immediately awarded "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher*, 17 F.3d at 176. *See also Abbott v. Sullivan*, 905 F.2d 918, 927 (6th Cir. 1990); *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 782 (6th Cir. 1987). The Court may award benefits where the proof of disability is strong and opposing evidence is lacking in substance, so that remand would merely involve the presentation of cumulative evidence, or where the proof of disability is overwhelming. *Faucher*, 17 F.3d at 176. *See also Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994); *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985).

Counsel assigns as error the refusal of the ALJ to subpoena the records from Dr. Scheidler, the treating physician who prescribed a cane for Plaintiff and treated him for a period of approximately two years. Counsel informed the ALJ that she was unable to secure the records because of an unpaid bill to the Scheidler medical practice. The ALJ informed counsel of two things: (1) Ohio law requires medical records to be disclosed free of charge and (2) the ALJ was "not going to subpoena them." (Tr. 48). The record does not reflect whether or not counsel issued a subpoena for the records, but one would think that representing a client diligently would require counsel to do so, especially since there is an accepted procedure whereby parties may request a subpoena for records 5 days before the hearing or longer. Nevertheless, when the ALJ obtains knowledge that meaningful records are not contained in the medical record before the Court, it is the ALJ's duty to see that the record is fully and fairly developed. This is the proper exercise of judicial power. Since Plaintiff had no orthopaedic surgeon to help the ALJ

understand his low back pain and thus was reliant upon internists and pain clinicians, the last internist to see him could have helped. The failure to develop the record was error, but whether the error rises to the level of prejudicial error is dependent upon other factors. In this case, the error was harmless.

Counsel also assigns as error the failure of the ALJ to consider gout to be a severe impairment. Again, we agree that the record shows repeated references to gout and that the impairment was more than trivial. Dr. Lewis referred to Plaintiff's gout as stable, but subject to flare-ups. Gout was also diagnosed by Drs. Malloy, Scheidler and Glaser and both Plaintiff and Ms. Powell testified that gout produced swollen joints and relative immobility when the feet were involved. Plaintiff was treated with Allopurinol and Indomethacin, medications one would prescribe for the treatment of gout. Again, the functional deficit resulting from gout is the issue, not the fact that Plaintiff has gout. To the extent gout, rather than low back pain, contributes to Plaintiff's relative immobility, a cane was prescribed. While the impairment, plus the use of a cane, would make Plaintiff more of a candidate for sedentary then light work, the fact is that the VE identified a representative number of jobs Plaintiff could perform while sitting. Thus, we evaluate the ALJ's error to be of the harmless variety, insofar as his failure to list gout as a severe impairment is concerned.

Plaintiff argues that the ALJ failed to apply the law as stated in *Drummond v. Commissioner of Social Security*, 126 F3d 837 (6th Cir. 1997). *Drummond* held that absent evidence of changed circumstances, the ALJ is bound by the prior findings under principles of *res judicata*. There must, therefore, be an adequate evidentiary base to support a finding of improvement. Defendant argues that there is new and material evidence in the form of Dr. McKenna's testimony as a medical expert, pulmonary test results in July, 2006 and November, 2006 and an MRI of the lumbar spine in January, 2008. Plaintiff argues that his condition has deteriorated because supplemental oxygen was prescribed in March, 2005 and that his condition remains stable only with the use of supplemental oxygen, a somewhat debatable question in light of the two pulmonary test results and Dr. McKenna's opinion that he saw no need for ambulatory oxygen. Oxygen was prescribed by Dr. Lewis, an internist, and continued by Dr. Wehr, a pulmonologist, largely to investigate possible sleep apnea, a condition sleep tests did not

confirm. Dr. McKenna, also a pulmonologist, opined that Plaintiff did not need ambulatory oxygen, while Dr. Scheidler, an internist, disagreed.

Drs. Lewis, Wehr and Scheidler are all treating physicians and Dr. Wehr is a specialist in pulmonary disease. Dr. McKenna is not a treating source, but he is a specialist, who had the opportunity to review all of Plaintiff's records. There was, as the ALJ pointed out, some inconsistency in Dr. Wehr's statements regarding Plaintiff's need for oxygen and the rate at which "episodes" occurred. It appears that Dr. Lewis prescribed oxygen until a pulmonary consultation could be obtained and that Dr. Wehr, the pulmonologist, continued Plaintiff on oxygen until a sleep study could be done.

In the face of conflicting medical opinion, resorting to the facts often helps. On June 25, 2008, Plaintiff was seen at HealthPoint after the passage of three days without oxygen. He experienced "coughing spasms and prolonged exhalation." The records shows the following: "severe COPD, cannot get oxygen, send to ER." (Tr. 474). Although one could challenge Plaintiff's credibility based on his testimony at the hearing, we doubt that he stretched the truth when giving a history to his physician and expecting treatment.

We must conclude that despite some evidence that his overall condition was better, the need for supplemental oxygen was demonstrated. Thus *Drummond* would require that, since Plaintiff's condition was not improving, the prior finding of the ALJ was *res judicata*.

The last Statement of Error asserts that the ALJ failed to follow the treating physician rule by rejecting the opinions of treating physicians Lewis, Wehr and Scheidler and relying upon the opinion of Dr. McKenna. As we previously stated, the medical opinions on the need for oxygen were conflicting. However, the facts demonstrated the need for oxygen as determined by the trio of treating physicians. Once the need for oxygen was established, it then follows from both VE William Cody's opinion and the opinion of VE Misha Dowd, that both light and sedentary exertional jobs would be eliminated.

Despite this Court's feeling that Plaintiff's COPD impairment was caused by excessive smoking, contrary to medical advice, his condition is such that he needs supplemental oxygen, a rather dangerous treatment for one addicted to cigarette smoking. Since supplemental oxygen would not be tolerated by employers of non-skilled work, except by an accommodation not

routinely granted, we find Plaintiff to be disabled and remand only for that finding and an award of benefits.

## CONCLUSION

Because substantial evidence demonstrates that Plaintiff requires the use of ambulatory supplemental oxygen, a limitation which would preclude both light and sedentary work, we find the proof of disability to be strong and opposing evidence lacking in substance. A remand in this matter would merely involve the presentation of cumulative evidence and would serve no useful purpose. *Faucher*, 17 F.3d at 176. *See also Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994); *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Accordingly, this matter should be remanded for an award of benefits.

## IT IS THEREFORE RECOMMENDED THAT:

This case be REVERSED pursuant to Sentence Four of 42 U.S.C. § 405(g) consistent with this opinion and REMANDED for an award of benefits

February 18, 2010

Timothy S. Hogan
United States Magistrate Judge

18

## NOTICE TO THE PARTIES REGARDING THE FILING
## OF OBJECTIONS TO THIS R&R

Pursuant to Fed. R. Civ. P. 72(b), within fourteen (14) days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985).

J:\HOGANTS\philpott.wpd